JOURNAL ENTRY AND OPINION
Defendant-appellant, Earl Taylor, appeals the judgment of the Cuyahoga County Court of Common Pleas denying his motion for a new trial. Finding no merit to appellant's appeal, we affirm.
On March 11, 1998, the Cuyahoga County Grand Jury indicted appellant on one count of felonious assault, in violation of R.C. 2903.11. Appellant entered a plea of not guilty and waived a jury trial. On August 12, 1998, after a two-day bench trial, the trial court found appellant guilty and subsequently sentenced him to two years incarceration.
This court affirmed appellant's conviction, finding there was sufficient evidence to support the verdict. State v. Taylor, (Dec. 9, 1999), Cuyahoga App. No. 75208, unreported. In our opinion, we set forth the facts and testimony adduced at trial as follows:
 The appellant and the victim met at a tavern in Lakewood shortly before the alleged incident took place sometime during the first week of December, 1997. Prior to this encounter at the tavern, the appellant and the victim were totally unfamiliar with each other. The appellant, a thirty-three-year-old male, struck up a conversation with the victim, a forty-six-year-old female, and proceeded to buy her a number of drinks. At some point, the parties decided to leave the bar and walk back to the appellant's apartment on Edgewater Drive, which was less than a five-minute walk from the bar.
 The testimony of the appellant and the victim var[y] substantially as to the sequence of events once they returned to the appellant's apartment. The victim, by her own admission, remembers very little of that evening other than that she was shocked and appalled when the appellant began engaging in lewd acts shortly after they had arrived at his apartment. The appellant claims that the couple engaged in consensual sex until well into the morning and that the lewd acts alleged by the victim never happened.
 At 6:00 P.M. the following evening, the appellant awoke from his slumber and found the victim sitting at a table, reading a book, and having a drink. Soon after that, the couple decided that they should once again head back to the same tavern that they had been at the previous evening. After drinking for several more hours, the appellant and the victim headed to a nearby grocery store to purchase some provisions and then went back to the appellant's apartment. Neither the appellant nor the victim testified that they engaged in any sort of sexual relations that evening. In fact, it is not at all clear from the record what they were doing during these evening/early morning hours. The appellant stated at trial that he was still awake at 5:00 A.M., watching television while he laid on the couch, when he heard a loud noise:
 Yeah, at 5 o'clock in the morning I remember — it's like I'm laying down, I have a couch and a love seat and they are set like on an angle like this. She was laying on the love seat and I was laying on the couch, so my back was kind of to her. I'm watching TV. Next thing I know she falls. I hear this like thumping you know. It's like — and she's stuck in between the couch, the love seat and this big coffee table I have and she was convulsing.
 And I thought maybe she was playing some kind of trick or something, you know, because I mean one second we're laughing, the next second she's convulsing. Then I notice it's like when I went to pick her up, you know, that I stepped in urine. She urinated all over the big area rug I have. Then right there — then I'm like, Oh, God, man. It's like — I called 911.
 The appellant did, in fact, call 911 and a crew of emergency medical technicians, accompanied by a Lakewood police officer, responded to the appellant's apartment. The victim at this time, although obviously disoriented, refused transport to the hospital. The responding personnel testified that they did not notice any significant bruising or abrasions on the victim's face.
 The appellant testified that after the EMS crews left, he advised the victim that she could sleep in his bed and that he would sleep on the couch. At 12:22 P.M., the appellant made another 911 call in which he reported that the victim was once again experiencing severe seizures. The appellant testified that he became aware of the victim's condition when he was awoken by a loud "bang" which came from his bedroom. The appellant stated that when he made his way to the bedroom, he discovered that the victim had fallen into a bookcase and that her nose was still "caught up in the corner of that cabinet and she was convulsing." The appellant claim[ed] that the victim lost control of all bodily functions after the onset of the seizure, which resulted in her excreting waste all over the entire room. When the emergency medical technicians arrived, they surmised that the victim had experienced severe trauma to the facial region, including a broken nose, severe bruising of both eyes, as well as numerous other bruises and abrasions. As was the case when they had been summoned earlier that morning, the medical technicians were once again accompanied by a uniformed Lakewood police officer. This officer testified to the same observations as to the condition of the scene, as did the medical personnel. The officer admitted that he did not check the appellant's fist for any telltale signs that he had beaten the victim, as is customary in this sort of case.
 After arriving at Lakewood Hospital, the victim was treated by Dr. Arthur Dick, a neurologist. Dr. Dick testified that the victim's seizures did not appear consistent with injuries normally incurred by a person who falls during a seizure and that he did not believe that the injuries could have been incurred as a result of falling on a flat surface, such as a shelf or a table:
 [A] person weighs 100, 130 pounds and falls on a table like that you expect to see skin abrasions, bruises. You don't expect to see this kind of blunt injury pattern. * * * You would see a single wound; you wouldn't see these multiple bruised wounds. * * *
 I can see if she were having a seizure on her face for instance, you know, you asked earlier why isn't this just an ordinary seizure you would have abrasions on your nose. You get abrasions on the high spots. If you — imagine your face being repeatedly bounced across a floor like this. If you're seizing, if you — if you're face down you hit the nose, the zygoma, the shoulder, skin — chin. You hit all the high spots, not the low spots. And you get elbows, you get knees sometimes, you get shoulders. If you're bruised you get hit in the back of the head.
 The victim initially denied that she was the victim of abuse, and told hospital staff that she had caused her own injuries — although she was very vague as to the details. The victim remained hospitalized for approximately two days, after which she checked herself out against the advice of her physicians.
 On the same day the victim left the hospital, she went to the Lakewood Police Department to report an assault. The victim gave the investigating officer a piece of paper that the appellant had given her with his name and phone number on it. A number of pictures, which were introduced into evidence at trial, were taken of the victim at the police station. These pictures clearly show numerous and severe facial injuries. The victim's right eye area is so badly swollen in the photographs that it is nearly completely shut.
 The investigating officers called appellant at the phone number that appellant had given the victim. The appellant agreed to come in the next day, but did not appear. During the next ten days, the police were unable to contact the appellant, although he did leave a pager number. The officers eventually learned that appellant was living at an address on W. 130th Street in Cleveland and arrested him there ten days after the initial contact had been made. The appellant provided the officers with a voluntary written statement wherein he denied ever hitting the victim or in any way causing her injuries.
On November 7, 1999, the victim died of a grand mal seizure. On April 27, 2000, appellant filed a motion for leave to file a motion for a new trial on the basis of newly discovered evidence, i.e., the coroner's verdict and autopsy report regarding the victim's death. The trial court subsequently denied appellant's motion. This court reversed that judgment on appeal, noting that the victim did not die until well after the one-hundred-twenty day time limit set forth in Crim.R. 33[1] had expired and, therefore, appellant was unavoidably prevented from obtaining the coroner's verdict and autopsy report within one-hundred-twenty days of the verdict. We specifically stated, however, that "the issue of whether or not the appellant's new evidence is sufficient to require the trial court to grant a new trial is not before this court, and, because we will not invade the province of the trial court, no finding is made as to the eventual ruling on the motion for a new trial."
On December 8, 2000, appellant filed his motion for a new trial. Attached to his motion were the coroner's verdict and autopsy report regarding the victim's death on November 7, 1999. The coroner's verdict stated that the cause of death was "Seizure disorder, etiology undetermined." The autopsy report essentially found that the victim had grand mal seizures exacerbated by chronic alcohol abuse. The autopsy report also indicated that the victim had suffered recent injuries to her head, trunk, left and right upper extremities and left leg. The injuries included ten bruises, a fracture of the left fourth rib, a scratch on the right forearm and an abrasion on the left knee.
Also attached to appellant's motion for a new trial was the affidavit of Michael Zurine, the victim's live-in boyfriend at the time of her death. Zurine stated that the victim drank alcohol more heavily than he perceived to be normal. Zurine also attested that he observed no bruises, contusion, cuts or other marks on the victim's body prior to her death; when he woke from a nap on November 7, 1999 he found her lying face down on the floor and unresponsive; and when he moved her body to find out what was wrong, he noticed a bruise on her chin. An EMS squad transported the victim to Lakewood Hospital, where she died shortly thereafter.
The third exhibit to appellant's motion was the report of Dr. Robert W. Hermanowski, in which he opined, after reviewing the autopsy findings of the Cuyahoga County Coroner, that the victim consumed large amounts of alcohol for a substantial period of time prior to her death and that heavy alcohol consumption is commonly associated with memory problems, including an inability to form new memories and the creation of false memories.
The trial court held a hearing regarding appellant's motion for a new trial on January 11, 2001. Appellant offered the testimony of Dr. William Bligh-Glover, a pathologist with the Cuyahoga County Coroner's office. Dr. Bligh-Glover testified that he performed an autopsy on the victim the day after her death and determined that she had died of a seizure disorder, cause unknown. Dr. Bligh-Glover testified further that the autopsy of the liver also indicated that the victim had abused alcohol.
Dr. Bligh-Glover also testified regarding pictures of the victim taken during the autopsy. Consistent with the autopsy report and the pictures, he noted that there were ten bruises on the victim's body, including bruises to the left temple and chin, right breast, left armpit, upper arm and shoulder, left thumb, right forearm and left knee. He also identified a scratch on the victim's right forearm and an abrasion on her left knee. Dr. Bligh-Glover testified that the bruises noted on the autopsy report and reflected in the pictures were equally consistent with either an assault or a seizure. He opined that the bruises on the victim were the result of a seizure because he did not observe any area of a pattern injury consistent with an assault.
The trial court denied appellant's motion for a new trial, stating:
 [I]'m going to deny the motion for a new trial, after considering all of the evidence that I've seen here today and the record as I know it and have refamiliarized myself with.
 Number one, I feel that the evidence that was proffered here today or presented here today does not convince the Court that there's a strong possibility that the outcome would change.
 Even in comparing the pictures of the decedent here and comparing the pictures from the trial, the woman suffered the ultimate grand mal seizure and had nowhere near the number of injuries that she sustained previously.
 And the Court does feel also that the evidence is cumulative.
 We knew that she had a seizure disorder. There was no secret about that.
 We knew that she was a very heavy drinker, just from the activity that we heard about from the testimony, not only from the victim at the time, the decedent, but also from the defendant.
 So we knew that they were drinking heavily, that there were, indeed, gaps in recollections and things like that, but no case is perfectly put together.
 But the Court does go back to the facts which supported its original finding of guilt, and that was that these were injuries that were sustained by the defendant, and the Court feels, in accordance with Dr. Dick's testimony, that they were consistent with the assault that occurred on that night.
Appellant appealed this judgment, raising one assignment of error for our review:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING MR. TAYLOR'S MOTION FOR NEW TRIAL WHERE THE OPINION TESTIMONY THAT THE INJURIES WERE ONLY CONSISTENT WITH ASSAULT, UPON WHICH THE ORIGINAL VERDICT OF GUILTY WAS BASED, IS NOW DIRECTLY CONTRADICTED BY EVIDENCE THAT SIMILAR INJURIES WERE SUBSEQUENTLY CAUSED BY SEIZURES AND BY OPINION TESTIMONY THAT THESE INJURIES WERE CONSISTENT WITH EITHER ASSAULT OR SEIZURES.
A ruling on a motion for a new trial on the basis of newly discovered evidence is within the discretion of the trial court, and, in the absence of a clear showing of abuse of that discretion, will not be disturbed on appeal. State v. Hill (1992), 64 Ohio St.3d 313; State v. Schiebel
(1990), 55 Ohio St.3d 71. An abuse of discretion connotes more than an error of law or judgment, it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217; Shaker Heights v. Al-Gureshi (Apr. 16, 1998), Cuyahoga App. No. 72562, unreported.
To warrant the granting of a motion for a new trial in a criminal case on the basis of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. Petro (1947), 148 Ohio St. 505, at the syllabus.
In denying appellant's motion for a new trial, the trial court found that the new evidence presented at the hearing was cumulative to that presented at trial and did not create a strong probability that the result of a new trial would be different.
Appellant contends that the trial court abused its discretion in denying his motion, however, because the evidence was not cumulative and, further, cast "serious doubt" on Dr. Dick's testimony. He asserts that the new evidence rebutted Dr. Dick's opinion testimony at trial that the victim's injuries were inconsistent with a seizure because 1) it demonstrated that her injuries were consistent with a seizure and 2) she incurred "similar injuries" in a subsequent seizure. Appellant contends that it is therefore likely that a new trial would produce a different result. We disagree.
First, the new evidence was clearly cumulative to that offered at trial. As the trial court noted, evidence that the victim suffered from a seizure disorder, could not remember many of the details regarding what happened while she was with appellant and abused alcohol all came out at trial. Thus, the testimony of Dr. Bligh-Glover that the victim abused alcohol and had a seizure disorder and the affidavit of Dr. Hermanowski regarding the connection between alcohol abuse and memory loss was not new information and contained no additional elements which added significantly to appellant's case. State v. Barber (1982),3 Ohio App.3d 445, 447.
Moreover, the new evidence does not persuade us there is a strong probability that the result of a new trial would be different. Dr. Bligh-Glover's testimony, the coroner's verdict, the autopsy report and the affidavit of Michael Zurine were all limited to the events surrounding the victim's death in 1999; they offered no new details regarding what happened to the victim or what caused her injuries in 1997. Although Dr. Bligh-Glover testified that the injuries sustained by the victim in the grand mal seizure that resulted in her death were consistent with a seizure, he offered no testimony regarding the injuries the victim sustained in 1997. Indeed, he testified that he had not seen the pictures taken of the victim in 1997 nor discussed her 1997 injuries with Dr. Dick. Therefore, Dr. Bligh-Glover's testimony that the bruises on the victim's body after her death were consistent with a grand mal seizure does not demonstrate that the injuries she incurred in 1997 were also consistent with a seizure.
Furthermore, contrary to appellant's assertion, there was no evidence adduced at the hearing that the 1997 injuries were similar to those sustained by the victim at her death. Dr. Bligh-Glover's testimony, the coroner's verdict and the autopsy report analyzed only the injuries incurred by the victim at the time of her death. Moreover, it is apparent from even a cursory review of the pictures of the 1997 injuries and the victim's later injuries that the type, size and number of the injuries were not at all similar. Indeed, the trial judge — the same judge who presided at the bench trial and the hearing on the motion for a new trial — specifically found that the injuries were not the same.
Appellant suggests that the new evidence mandates a new trial because it calls into question Dr. Dick's trial testimony that the victim's 1997 injuries were not consistent with a seizure. In light of the dissimilar nature of the two sets of injuries and the lack of any new evidence regarding what happened in 1997, however, the newly discovered evidence does not necessarily contradict Dr. Dick's testimony. Therefore, although a new trial might persuade a new jury to acquit appellant, we are not convinced there is a "strong probability" this would occur.
Finally, we note that although the coroner's verdict and autopsy report were clearly not available at trial, evidence to contradict Dr. Dick's opinion testimony regarding the cause of the victim's injuries could have been procured by appellant at the time of trial. The realm of possible evidence to rebut Dr. Dick's testimony was not limited to an autopsy report. Appellant could have hired his own expert to analyze the victim's injuries and offer testimony to rebut Dr. Dick's opinion.
Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion for a new trial.
Appellant's assignment of error is therefore overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and MICHAEL J. CORRIGAN, J., CONCUR.
[1] Crim.R. 33(B) provides, in pertinent part: "Motions for new trial on account of newly discovered evidence shall be filed within one-hundred-twenty days after the day upon which the verdict was rendered * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one-hundred-twenty day period."